UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

JAMES WILLIAM MEDINA-RODRIGUEZ ,

        Plaintiff,

v.

UNKNOWN FRANK, et al.,

        Defendants.
_____/

Case No. 1:22-cv-471

Honorable Phillip J. Green

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Plaintiff has been granted leave to proceed *in forma pauperis*. (ECF No. 4.) Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, Plaintiff consented to proceed in all matters in this action under the jurisdiction of a United States magistrate judge. (ECF No. 5.)

This case is presently before the Court for preliminary review under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court is required to conduct this initial review prior to the service of the complaint. *See In re Prison Litig. Reform Act*, 105 F.3d 1131, 1131, 1134 (6th Cir. 1997); *McGore v. Wrigglesworth*, 114 F.3d 601, 604–05 (6th Cir. 1997). Service of the complaint on the named defendants is of particular significance in defining a putative defendant's relationship to the proceedings.

"An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process." *Murphy Bros. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999). "Service of process, under longstanding tradition in our system of justice, is fundamental to any procedural imposition on a named defendant." *Id.* at 350. "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id.* (citations omitted). That is, "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Id.* at 351. Therefore, the PLRA, by requiring courts to review and even resolve a plaintiff's claims before service, creates a circumstance where there may only be one party to the proceeding—the plaintiff—at the district court level and on appeal. *See, e.g., Conway v. Fayette Cnty. Gov't*, 212 F. App'x 418 (6th Cir. 2007) ("Pursuant to 28 U.S.C. § 1915A, the district court screened the complaint and dismissed it without prejudice before service was made upon any of the defendants . . . [such that] . . . only [the plaintiff] [wa]s a party to this appeal.").

Here, Plaintiff has consented to a United States magistrate judge conducting all proceedings in this case under 28 U.S.C. § 636(c). That statute provides that "[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings . . . and order the entry of judgment in the case . . . ."

2

28 U.S.C. § 636(c). Because the named Defendants have not yet been served, the undersigned concludes that they are not presently parties whose consent is required to permit the undersigned to conduct a preliminary review under the PLRA, in the same way they are not parties who will be served with or given notice of this opinion. *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) ("The record does not contain a consent from the defendants[; h]owever, because they had not been served, they were not parties to the action at the time the magistrate entered judgment.").[1]

Under the PLRA, the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's claims against Defendants Peterson and

---

[1] *But see Coleman v. Lab. & Indus. Rev. Comm'n of Wis.*, 860 F.3d 461, 471 (7th Cir. 2017) (concluding that, when determining which parties are required to consent to proceed before a United States magistrate judge under 28 U.S.C. § 636(c), "context matters" and the context the United States Supreme Court considered in *Murphy Bros.* was nothing like the context of a screening dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c)); *Williams v. King*, 875 F.3d 500, 503–04 (9th Cir. 2017) (relying on Black's Law Dictionary for the definition of "parties" and not addressing *Murphy Bros.*); *Burton v. Schamp*, 25 F.4th 198, 207 n.26 (3d Cir. Feb. 10, 2022) (premising its discussion of "the term 'parties' solely in relation to its meaning in Section 636(c)(1), and . . . not tak[ing] an opinion on the meaning of 'parties' in other contexts").

3

Grossman. Plaintiff's Eighth Amendment and state law claims against Defendant Frank remain in the case.

## Discussion

### I.  Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Oaks Correctional Facility (ECF) in Manistee, Manistee County, Michigan. The events about which he complains occurred at that facility. Plaintiff sues Correctional Officers Unknown Frank, Unknown Peterson, and Unknown Grossman.

At the time of the events described in Plaintiff's complaint, Plaintiff was housed in the prison's Start Unit. (Compl., ECF No. 1, PageID.3.)[2] Plaintiff alleges that Start Unit policy requires that all inmates within Plaintiff's unit, other than working porters, be handcuffed and escorted by correctional officers when taken out of their cells. (*Id.*)[3]

---

[2] The Start Unit is a program designed "[t]o provide a secure general population alternative to administrative segregation . . ." for prisoners diagnosed with serious mental illness, those "who refuse to return to a traditional general population setting," prisoners with a history of repeated disruptive behavior and others who would benefit from placement in the unit. (ECF No. 1-3, PageID.15.) Inmates are classified according to stage, with corresponding restrictions. (*Id.*, PageID.9–15.)

[3] Plaintiff cites page 10 of the "Alternative to Segregation Start Units" policies as evidence that all inmates other than working porters must be handcuffed and escorted by correctional officers when taken out of their cells; however, such restrictions appear to be required only for inmates in "Stage 0" and "Stage 1" of the Start Unit. (ECF No. 1-3, PageID.21–22.) Plaintiff does not indicate the Stage(s) of the inmates housed with Plaintiff. Accordingly, the Court has accepted Plaintiff's allegation as to the application of Start Unit policies as true for purposes of screening only.

4

Plaintiff alleges that, on February 19, 2022, another inmate, Inmate Oliver, threw an unknown liquid on Plaintiff, causing a burning sensation on Plaintiff's eyes, face, and arms. (*Id.*) Inmate Oliver was placed on "slot restriction" and received a misconduct ticket for assault and battery; a memorandum was posted informing the officers that Inmate Oliver was to be kept away from Plaintiff. (*Id.*)

On February 23, 2022, Plaintiff was in his cell when he heard an announcement that inmates from the yard cages would be coming inside and that other inmates would then have a chance to go outside. (*Id.*) Deciding to perform personal hygiene to prepare, Plaintiff covered his cell window. (*Id.*) Although Defendant Peterson was aware that Inmate Oliver was required to be handcuffed and escorted while moving around the unit and was aware that Inmate Oliver was not to have any contact with Plaintiff, Defendant Peterson let Inmate Oliver out of his yard cage without handcuffs and without an escort. (*Id.*) When Inmate Oliver grabbed Plaintiff's cell flap and opened it, Defendant Frank used the control panel to open Plaintiff's cell door, allowing Inmate Oliver inside. (*Id.*) Inmate Oliver charged into Plaintiff's cell and began assaulting Plaintiff. (*Id.*) Plaintiff claims that he suffered a bloody nose and "knots" on his head and face as a result. (*Id.*)

Following Inmate Oliver's attack, Plaintiff asked Defendant Grossman if a medical worker could come to Plaintiff's cell because Plaintiff was scared to leave. (*Id.*) After one hour had passed, Plaintiff asked Defendant Grossman if medical assistance was coming. (*Id.*) Defendant Grossman responded that "he wasn't sure."

5

(*Id.*) "Instantly [O]fficer [F]rank came over the unit intercom and said, 'Our nurses don't come see little b****es.'" (*Id.*)

Approximately three and a half hours after the incident involving Inmate Oliver, Defendant Grossman prepared a misconduct report, charging Inmate Oliver with Unauthorized Occupation of a Cell and Threatening Behavior. (*Id.*; ECF No. 1-5, PageID.30.) Defendant Grossman's misconduct report indicates only that Inmate Oliver had "his hands raised and swinging" at Plaintiff but does not state that Plaintiff was actually harmed. (ECF No. 1-5, PageID.30.) Plaintiff claims that he is still being denied medical attention due to unidentified "officers telling them that [Plaintiff does not] want medical attention." (ECF No.1, PageID.4.)

Plaintiff claims that Defendants violated Plaintiff's Eighth Amendment rights. He asserts that Defendants Peterson and Frank allowed Inmate Oliver to attack Plaintiff, while Defendant Grossman refused "to seek healthcare after knowing [Plaintiff] was just assaulted" and submitted a false misconduct report for Inmate Oliver "minimi[z]ing the charge to make it seem like [Plaintiff] was not harmed . . . ." (*Id.*) Plaintiff seeks compensatory damages against all Defendants. (*Id.*)

## II.  Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of

6

action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

7

### A. Eighth Amendment Failure to Protect

Plaintiff claims that Defendants Peterson and Frank violated Plaintiff's Eighth Amendment rights when they failed to protect Plaintiff from Inmate Oliver. (ECF No. 1, PageID.4.)

Inmates have a constitutionally protected right to personal safety grounded in the Eighth Amendment's prohibition of "cruel and unusual punishments." *Farmer v. Brennan*, 511 U.S. 825, 833 (1994). Thus, prison staff are obliged "to take reasonable measures to guarantee the safety of the inmates" in their care. *Hudson v. Palmer*, 468 U.S. 517, 526–27 (1984). In particular, because officials have "stripped [prisoners] of virtually every means of self-protection[,]" "officials have a duty . . . to protect prisoners from violence at the hands of other prisoners." *Farmer*, 511 U.S. at 833 (citations omitted).

To establish liability under the Eighth Amendment for a claim based on a failure to prevent harm to a prisoner, a plaintiff must show that the prison official acted with "deliberate indifference" to a substantial risk of serious harm facing the plaintiff. *Id.* at 834; *Helling v. McKinney*, 509 U.S. 25, 32 (1993); *Bishop v. Hackel*, 636 F.3d 757, 766–67 (6th Cir. 2011); *Curry v. Scott*, 249 F.3d 493, 506 (6th Cir. 2001); *Woods v. Lecureux*, 110 F.3d 1215, 1222 (6th Cir. 1997); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996); *Taylor v. Mich. Dep't of Corr.*, 69 F.3d 76, 79 (6th Cir. 1995). Deliberate indifference is a higher standard than negligence and requires that "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that

8

a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837; *see also Bishop*, 636 F.3d at 766–67.

### 1. Defendant Peterson

Plaintiff alleges that Defendant Peterson allowed Inmate Oliver to access the unit from the yard without first placing Inmate Oliver in handcuffs or requiring that Inmate Oliver have an officer escort, in violation of Start Unit policies. (ECF No. 1, PageID.3.) At the time that Defendant Peterson allowed Inmate Oliver to freely access the unit, Plaintiff was in his locked cell with the cell window covered. (*Id.*)

Even reading Plaintiff's complaint indulgently, Plaintiff alleges only that Defendant Peterson failed to properly enforce prison policy in allowing Inmate Oliver access to the unit unsecured. However, the "imperfect enforcement" of prison policy, while perhaps negligent, "does not equate to deliberate indifference . . . ." *Green v. Martin*, 18 F. App'x 298, 300 (6th Cir. 2001) (citation omitted). At the time that Defendant Peterson released Plaintiff into the unit, Plaintiff was locked safely in his cell. There is no indication that Defendant Peterson was aware that Defendant Frank would subsequently open Plaintiff's cell door from the control panel to allow Inmate Oliver access to Plaintiff. Accordingly, Plaintiff's complaint fails to plausibly suggest that Defendant Peterson both knew of and deliberately disregarded a specific risk to Plaintiff's safety, in violation of Plaintiff's Eighth Amendment constitutional rights. The Court will dismiss Plaintiff's Eighth Amendment claim against Defendant Peterson.

### 2. Defendant Frank

In contrast, Plaintiff alleges that Defendant Frank knew that Inmate Oliver was to be kept separate from Plaintiff and was aware that Inmate Oliver was not handcuffed as required, but deliberately unlocked Plaintiff's cell door, granting Inmate Oliver access to Plaintiff. (ECF No. 1, PageID.3.) Following Inmate Oliver's assault and battery of Plaintiff, Defendant Frank expressed his disdain for Plaintiff, stating, "Our nurses don't come see little b****es," when responding to Plaintiff's request for medical care. (*Id.*). At this stage of the proceedings, these facts, taken as true, are sufficient to state a claim against Defendant Frank for deliberate indifference, in violation of Plaintiff's Eighth Amendment rights.

### B. Eighth Amendment Denial of Medical Care

Plaintiff claims that Defendant Grossman violated Plaintiff's Eighth Amendment right to be free from cruel and unusual punishment by denying Plaintiff medical care in two ways: (1) refusing to provide Plaintiff with medical care following Inmate Oliver's attack; and (2) authoring a false misconduct report that made it seem as if Plaintiff was not injured. (ECF No. 1, PageID.4.)

In its prohibition of "cruel and unusual punishments," the Eighth Amendment also obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 97, 103–04 (1976). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104–05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001). Deliberate indifference may be manifested by a doctor's failure to respond to

10

the medical needs of a prisoner, or by "prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. Regardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983." *Estelle*, 429 U.S. at 104–05.

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer*, 511 U.S. at 834. To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 899 (6th Cir. 2004); *see also Phillips v. Roane Cnty.*, 534 F.3d 531, 539–40 (6th Cir. 2008). Obviousness, however, is not strictly limited to what is detectable to the eye. Even if the layman cannot see the medical need, a condition may be obviously medically serious where a layman, if informed of the true medical situation, would deem the need for medical attention clear. *See, e.g.*, *Rouster v. Saginaw Cnty.*, 749 F.3d 437, 446–51 (6th Cir. 2014) (holding that a prisoner who died from a perforated duodenum exhibited an "objectively serious need for medical treatment," even though his symptoms appeared to the medical staff at the time to be consistent with alcohol withdrawal); *Johnson v. Karnes*, 398 F.3d 868, 874 (6th Cir. 2005) (holding that prisoner's severed tendon was a "quite obvious" medical need, since "any lay person

11

would realize to be serious," even though the condition was not visually obvious). If the plaintiff's claim, however, is based on "the prison's failure to treat a condition adequately, or where the prisoner's affliction is seemingly minor or non-obvious," *Blackmore*, 390 F.3d at 898, the plaintiff must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment," *Napier v. Madison Cnty.*, 238 F.3d 739, 742 (6th Cir. 2001) (internal quotation marks omitted).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind" in denying medical care. *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000). Deliberate indifference "entails something more than mere negligence," but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer*, 511 U.S. at 835. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. To prove a defendant's subjective knowledge, "[a] plaintiff may rely on circumstantial evidence . . . : A jury is entitled to 'conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.'" *Rhinehart v. Scutt*, 894 F.3d 721, 738 (6th Cir. 2018) (quoting *Farmer*, 511 U.S. at 842)).

Plaintiff claims that he suffered a bloody nose and "knots" on his head and face, and requested that Defendant Grossman send a "medical worker" to Plaintiff's cell because Plaintiff was afraid to leave to seek medical attention. (ECF No. 1,

12

PageID.3.)  After an hour had passed, Plaintiff asked Defendant Grossman if medical assistance was coming.  (*Id.*)  Defendant Grossman responded that "he wasn't sure." (*Id.*)  Approximately three and a half hours later, Defendant Grossman authored a misconduct report, averring that Inmate Oliver had "his hands raised and swinging" at Plaintiff, with no reference to actual contact or injury.  (ECF No. 1-5, PageID.30.) Plaintiff contends that he is still in physical pain as a result of the attack by Inmate Oliver.  (ECF No. 1, PageID.4.)

With respect to the objective component, the Court concludes that Plaintiff fails to allege a sufficiently serious medical need in claiming that he sustained a bloody nose and bumps to his face and head.  *See Lockett v. Suardini*, 526 F.3d 866, 876–77 (6th Cir. 2008) (finding plaintiff's claims of minor lacerations and soreness in two of his fingers was not a serious medical need); *Blackmore* , 390 F.3d at 898 (citing cases involving nonobvious and minor injuries that did not support Eighth Amendment claims, including minor cuts and bruises that did not require stitches or painkillers); *Martin v. Gentile*, 849 F.2d 863, 871 (4th Cir. 1988) (finding that a cut over one eye, a quarter-inch piece of glass embedded in the plaintiff's palm, and bruises on the plaintiff's shoulders and elbows did not amount to a serious medical need); *Roseberry v. Prisoner Transp. Servs.*, No. 4:15-CV-P126-JHM, 2016 WL 324549, at *4 (W.D. Ky. Jan. 26, 2016) (finding that swelling and bruise on the plaintiff's shoulder did not amount to a serious medical need).  However, even if Plaintiff had satisfied the objective component of a sufficiently serious medical need, as explained below, Plaintiff's complaint fails to satisfy the subjective component.

13

Plaintiff does not contend that Defendant Grossman failed to contact medical staff as requested. Indeed, Defendant Grossman's response that he "wasn't sure" whether medical personnel were on their way—rather than simply responding that they were not—implies that medical staff had been contacted. Here, it appears only that medical personnel were either delayed or chose not to respond to Plaintiff's request for care within his cell for seemingly minor injuries.

Administrative or custody officials who have no training or authority to supervise healthcare officials cannot be held liable for those officials' inadequate care. *See Winkler v. Madison Cnty.*, 893 F.3d 877, 895 (6th Cir. 2018) (concluding that a custody officer was entitled to rely on the medical provider's judgment); *Smith v. Cnty. of Lenawee*, 505 F. App'x 526, 532 (6th Cir. 2012) ("[I]f a prisoner is under the care of medical experts . . . a non-medical prison official will generally be justified in believing that the prisoner is in capable hands." (quoting *Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004))); *see also Newberry v. Melton*, 726 F. App'x 290, 296–97 (6th Cir. 2018) (same); *Cuco v. Fed. Med. Ctr.-Lexington*, No. 05-CV-232-KSF, 2006 WL 1635668, at *21–22 (E.D. Ky. June 9, 2006) (holding that prison administrative officials were not liable for overseeing and second-guessing care given by medical officials). If medical staff were contacted but did not promptly attend to Plaintiff's bumps and bloody nose, Defendant Grossman was not deliberately indifferent in deferring to that response. There are no facts to indicate that Defendant Grossman was subjectively aware that Plaintiff would face a substantial risk of serious harm as a result of a lack of immediate medical care for bumps and a bloody nose.

Plaintiff also alleges that Defendant Grossman provided a false narrative in connection with the misconduct report issued to Inmate Oliver, "minimizing the charge to make it seem like [Plaintiff] was not harmed[, thereby] keeping [Plaintiff] injured." (ECF No. 1, PageID.4.) This too fails to state an Eighth Amendment claim for denial of medical care. There is no indication that medical personnel were provided with a copy of the misconduct report for Inmate Oliver, authored hours after Plaintiff had requested medical care, or that it played any role in the provision of medical care or lack thereof. Plaintiff's complaint is simply devoid of facts that would connect Defendant Grossman's Misconduct Report to Plaintiff's medical care claim. For all of the reasons set forth above, the Court will dismiss Plaintiff's Eighth Amendment claim against Defendant Grossman.

C. **State Law Claims**

In addition to alleging violations of Plaintiff's constitutional rights, Plaintiff asserts that Defendants Peterson and Frank acted with "gross negligence." (ECF No. 1, PageID.4.) Claims under § 1983 can only be brought for "deprivations of rights secured by the Constitution and laws of the United States." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982). "Gross negligence is not actionable under § 1983, because it is not 'arbitrary in the constitutional sense.'" *Lewellen v. Metro. Gov't of Nashville & Davidson Cnty., Tenn.*, 34 F.3d 345, 351 (6th Cir. 1994) (quoting *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 129 (1992)). Therefore, the Court liberally construes Plaintiff's reference to gross negligence as an attempt to raise additional claims under Michigan common law.

15

In determining whether to retain supplemental jurisdiction over state law claims, "[a] district court should consider the interests of judicial economy and the avoidance of multiplicity of litigation and balance those interests against needlessly deciding state law issues." *Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993); *see also Moon v. Harrison Piping Supply*, 465 F.3d 719, 728 (6th Cir. 2006) ("Residual jurisdiction should be exercised only in cases where the interests of judicial economy and the avoidance of multiplicity of litigation outweigh our concern over needlessly deciding state law issues." (internal quotation marks omitted)). Dismissal, however, remains "purely discretionary." *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) (citing 28 U.S.C. § 1367(c)); *Orton v. Johnny's Lunch Franchise, LLC*, 668 F.3d 843, 850 (6th Cir. 2012).

Because Plaintiff's federal claim against Defendant Peterson will be dismissed, the Court will decline to exercise supplemental jurisdiction over Plaintiff's state law claim against this Defendant. Therefore, Plaintiff's state law claim against Defendant Peterson will be dismissed without prejudice to Plaintiff's ability to bring that claim in the state court.

As to Defendant Frank, because Plaintiff continues to have a pending federal claim against him, the Court will exercise supplemental jurisdiction over Plaintiff's state law claim against Defendant Frank.

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's Eighth Amendment claims Defendants Peterson and Grossman will be dismissed for failure to state a claim, under 28 U.S.C. §§

1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will also dismiss Plaintiff's state law claim against Defendant Peterson without prejudice. Plaintiff's Eighth Amendment and state law claims against Defendant Frank remain in the case.

An order consistent with this opinion will be entered.


Dated:  November 17, 2022              /s/ Phillip J. Green
                                       PHILLIP J. GREEN
                                       United States Magistrate Judge